**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Harry O'Neal,                )<br>                              )<br>         Plaintiff,      )<br>v.                            )<br>                              )<br>Quicken Loans, Inc.,         )<br>                              )<br>         Defendant.     )<br>_____) | Civil Action No. 1:15-cv-03712-JMC<br><br>**ORDER AND OPINION** |

This matter is before the court pursuant to Defendant Quicken Loans, Inc.'s ("Defendant") Motion to Dismiss. (ECF No. 4.) Plaintiff Harry O'Neal ("Plaintiff") opposes Defendant's Motion to Dismiss. (ECF No. 29.) For the reasons set forth below, the court **GRANTS** Defendant's Motion to Dismiss.

## I.     RELEVANT BACKGROUND OF PENDING MOTION

On April 23, 2015, Plaintiff filed a complaint for a non-jury trial in the Court of Common Pleas in Barnwell County, South Carolina. (ECF No. 1-1 at 7.) Plaintiff alleges that he obtained a real estate loan with Defendant.[1] (*Id.* at 7 ¶5.) Plaintiff further alleges that pursuant to South Carolina law, Defendant was required to determine Plaintiff's preference for legal counsel to assist him during the closing of the transaction. (*Id.* at 7 ¶ 6.) Plaintiff alleges that Defendant provided him with a pre-populated Attorney/Insurance Preference Checklist, which prevented Plaintiff from choosing an attorney to represent him in the transaction. (*Id.* at 8 ¶¶ 8-13.) According to Plaintiff, the deprivation of a meaningful choice as to the attorney to represent him in the transaction was

---

[1] Defendant is the servicer of Plaintiff's loan, which is secured by a mortgage (hereinafter "loan agreement") on Plaintiff's real property. The loan agreement establishes Defendant's security interest in the property which endures until Plaintiff pays the debt. (*See* ECF No. 1-2 at 3 ¶ 6.)

1

unconscionable pursuant to S.C. Code Ann. §§ 37-10-105 (2016), 37-5-108 (2016).  (*Id.* at 8 ¶14.) Plaintiff requests that the court issue an order and grant relief pursuant to S.C. Code Ann. § 37-10-105(c).  (*Id.* at 9 ¶ 21.)  Plaintiff further requests that the court assess a statutory penalty between $1,500.00 and $7,500.00.  (*Id.* at 9 ¶ 22.)  Plaintiff also asserts that he is entitled to attorney's fees and costs from Defendant as permitted by statute.  (*Id.* at 9 ¶ 23.)  For jurisdictional purposes, Plaintiff alleged that he is a citizen of the state of South Carolina, and Defendant is a corporation organized under the laws of a state other than the state of South Carolina with a principal place of business in Michigan.[2]  (ECF No. 1-1 at 8 ¶¶ 1, 2.)  Plaintiff did not specify an amount of damages in the Complaint, but prayed "for the relief set forth above, for attorney fees and the costs of this action, and for such other and further relief as this court deems just and proper, but in no event, for an amount greater than Seventy-Five Thousand Dollars ($75,000)."  (*Id.* at 9.)

On September 16, 2015, Defendant filed a Notice of Removal asserting that the court possessed jurisdiction over the matter because complete diversity of citizenship exists between the parties and the amount in controversy requirement is met. (ECF No. 1 at 2.)  That same day, Defendant filed a Motion to Dismiss as well.  (ECF No. 4.) Thereafter, on October 15, 2015, Plaintiff moved the court to remand the matter to state court on the basis "that the amount in controversy does not exceed $75,000.00 as required under 28 U.S.C. § 1332(a)(1)."  (ECF No. 9.) Plaintiff further asserted that removal based on bankruptcy jurisdiction is not proper because there is no pending bankruptcy case. (*Id.*) Plaintiff also moved the court to stay all matters related to Defendant's Motion to Dismiss.[3]  (ECF No. 9.)  After a hearing on the matter, the court denied

---

[2] Plaintiff did not specify a state of incorporation for Defendant in the Complaint.  (*See* ECF No. 1-1 at 7 ¶ 2.)  In the Notice of Removal, Defendant admits that its principal place of business and place of incorporation is Michigan.  (ECF No. 1 at 2.)

[3] In a text order dated March 4, 2016, this court granted the motion to stay motion to dismiss pending the resolution of the motion to remand.  (ECF No. 19.)

Plaintiff's Motion to Remand, and extended the time for Plaintiff to respond to Defendant's Motion to Dismiss. (ECF Nos. 25, 26.) On May 9, 2016, Plaintiff filed a Return in Opposition to Defendant's Motion to Dismiss. (ECF No. 29.) Subsequently, Defendant filed a Reply in Support of its Motion to Dismiss. (ECF No. 31.) A hearing on the matter was held on June 28, 2016.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). While the complaint need not be minutely detailed, it must provide enough factual details to put the opposing party on fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In order to withstand a motion to dismiss, a complaint must contain factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept the allegations in the complaint as true, and all reasonable factual inferences must be drawn in favor of the party opposing the motion. *Id.* at 679. If the court determines that those factual allegations can "plausibly give rise to an entitlement to relief," dismissal is not warranted. *Id.*

## III. ANALYSIS

The allegation at the crux of Plaintiff's complaint is that Defendant violated the attorney preference statute, S.C. Code Ann. § 37-10-102 (2016), by providing Plaintiff with an attorney preference form that was already filled in. (ECF No. 1-1 at 8 ¶ 8.) Instead of permitting Plaintiff to select his own attorney, Plaintiff alleges that he was provided with a form in which "I/We will not use the services of legal counsel" was already printed on the form with no option to fill in his own selection. (*Id.* at ¶ 9.) Defendant asserts Plaintiff's claims should be dismissed because

3

Plaintiff previously proceeded in bankruptcy whereby his debt pursuant to this loan agreement was discharged, accordingly Defendant asserts that Plaintiff is no longer a debtor with standing to pursue this claim. (ECF No. 4 at 1.) Further, Defendant asserts that because Plaintiff proceeded in bankruptcy and did not disclose this attorney preference violation claim to the bankruptcy court, principles of judicial estoppel, res judicata, and equitable estoppel prevent him from proceeding with this claim now. (*Id.*) Finally, Defendant contends that Plaintiff's claim remains the property of the bankruptcy estate and can only be asserted by the trustee. (*Id.* at 10.) Plaintiff maintains that his complaint is legally sufficient to maintain his cause of action, and does not directly address Defendant's assertions regarding the effect of Plaintiff's discharge in bankruptcy on this current claim.

### A. Standing

The South Carolina Consumer Protection Code ("SCCPC") allows a private right of action for violation of the attorney preference statute, but only a "debtor" has standing to assert a cause of action. S.C. Code Ann. § 37-10-105(a) ("If a creditor violates a provision of this chapter, the debtor has a cause of action . . . to recover actual damages"). Pursuant to the statute, a debtor is defined as "any person who is an obligor in a credit transaction, including any cosigner, comaker, guarantor, endorsee or surety, and the assignee of any obligor, and also includes any person who agrees to assume the payment of a credit obligation." S.C. Code Ann. § 37-1-301(14). Defendant argues that because Plaintiff's debts were discharged in bankruptcy, (*see* ECF No. 4-4), Plaintiff is no longer a "debtor." As such, Defendant contends that Plaintiff cannot maintain a cause of action arising under the Consumer Protection Code. In support of its argument, Defendant cites to West Virginia cases where plaintiffs whose debts were discharged in bankruptcy were deemed unable to pursue a cause of action under the West Virginia Consumer Credit Protection Act

4

("WVCCPA") because they were no longer "consumers." *See, e.g.*, *Fabian v. Home Loan Center, Inc.*, Case No. 5:14-cv-42, 2014 WL 1648289, at *10-14 (N.D.W. Va. Apr. 24, 2014); *McCoy v. S. Energy Homes*, Inc., Case No. 1:09-cv-1271, 2012 WL 1409533, at *10 (S.D.W. Va. Apr. 23, 2012) (holding that persons "not in debt" to the defendant are not "consumers" under the WVCCPA, and therefore, lack standing to assert a private cause of action under the WVCCPA); *Cather v. Seneca-Upshur Petroleum, Inc.*, Case No. 1:09-cv-139, 2010 WL 3271965, at *7-8 (N.D.W. Va. Aug. 18, 2010) ("Because the plaintiffs in this case are . . . not 'consumers' . . . the WVCCPA does not provide them with a legal remedy in this case.").

As a threshold matter, there are no South Carolina cases addressing whether a "debtor" loses standing under the SCCPC by having his or her debts discharged in bankruptcy. As a result, this court is required to determine how a South Carolina court might rule on this issue. In *Fabian*, the case cited by Defendant that is most analogous to the facts before this court, the West Virginia district court determined that the plaintiffs did not have standing under the WVCCPA to contest the enforceability of the loan agreement for the home equity line of credit they took out on their home because the debt had been discharged in bankruptcy. *Fabian*, 2014 WL 1648289, at *5. In reaching this conclusion, the court settled on the relevant definition for "consumer" under the WVCCPA, which is defined as "any natural person obligated or allegedly obligated to pay any debt." *Id.* The court noted that the plaintiffs were no longer obligated to pay the debt, and that "allegedly obligated" did not apply to them because it was intended to provide relief to those plaintiffs who suffer from harassment due to "collection activities conducted without regard to whether the debt is actually owed." *Id.* at *6. Accordingly, the court determined that the plaintiffs were not consumers under the code. *Id.*

Based on this court's review, the definition of "debtor" before this court is distinguishable from the definition of "consumer" as interpreted by the West Virginia district court. It is clear that the WVCCPA requires a present and personal obligation to pay a debt.[4] Under the SCCPC, there is no requirement that a debtor is presently obligated to pay a debt. The SCCPC's definition of "debtor" just requires a person to be an obligor or to assume payment of a credit obligation in a given credit transaction. Thus, one can be a "debtor" based on his or her assumption of a credit obligation in a given credit transaction without currently being obligated to pay the debt. Here, Plaintiff asserts that he entered into the loan agreement with Defendant whereby he assumed payment of a credit obligation to Defendant. Defendant does not dispute that. Accordingly, the court finds that the discharge of Plaintiff's debt in bankruptcy does not change his status as a "debtor" in the credit transaction at issue. Plaintiff's action is timely, and this court finds that Plaintiff's complaint is legally sufficient to demonstrate that he is a "debtor" pursuant to the SCCPC with standing to pursue this claim.

Although this court finds that Plaintiff has standing to pursue the claim because he is a "debtor" pursuant to the SCCPC, Defendant also alleges that Plaintiff lacks standing to bring this claim because it still belongs to the bankruptcy estate and only the Trustee has standing to bring the claim. (ECF No. 4 at 10.) In the instant case, Defendant argues that a debtor regains standing to pursue a pre-petition claim "only if the trustee abandons it . . . or if the bankruptcy court exempts it under the applicable exemption scheme." (*Id.* at 11 (citing 11 U.S.C. § 554(a)).) Defendant asserts that the trustee never abandoned Plaintiff's attorney preference claim. (*Id.* at 11.)

---

[4] The court further notes that in *McCoy v. S. Energy Homes*, the West Virginia court also determined that cosigners on a loan were not "consumers" within the definition of the WVCCPA, *see* 2012 WL 1409533, whereas under the SCCPC, a "cosigner" is considered a "debtor," *see* S.C. Code Ann. § 37-1-301(14).

6

When a debtor initiates a bankruptcy action, a bankruptcy estate is created, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The property of the estate includes causes of action, both active and potential, that exist at the time the bankruptcy action is commenced. *Logan v. JKV Real Estate Servs.*, 414 F.3d 507, 512 (4th Cir. 2005). A debtor seeking relief through a bankruptcy action is required to disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(a)(1). This duty to disclose is a continuing one, and a debtor must amend his financial statements when circumstances change. *See In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999). Here, it is undisputed that Plaintiff filed for bankruptcy and received relief from the bankruptcy court. It is also undisputed that the attorney preference form at issue was part of a loan agreement for a property that ultimately became property of the bankruptcy estate. Thus, the attorney preference violation claim existed at the commencement of the bankruptcy action and is part of the bankruptcy estate.

The Fourth Circuit has recognized in the "Chapter 7 bankruptcy context—which requires liquidation and distribution of assets by the trustee—[that] if a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). A debtor may pursue a claim belonging to the bankruptcy estate only if the trustee abandons it pursuant to 11 U.S.C. § 554(a) or if the bankruptcy court exempts it. *See Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1998) (requiring "before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim"). Pursuant to section 554(a), a trustee may abandon any property of the estate after notice and a hearing. 11 U.S.C. § 554(a). Alternatively, the debtor may request a court to order the trustee to abandon the property of the

7

estate, but a hearing is required before the court may issue such order. 11 U.S.C. § 554(b). Based on information submitted to the court, it appears that Plaintiff was not made aware of the instant claim until he sought counsel to assist him in a pending foreclosure action. (*See* ECF No. 12-2.) It also appears that Plaintiff informed the Bankruptcy Trustee, albeit informally, about the attorney preference claim, and the Bankruptcy Trustee indicated that he would not seek to reopen the bankruptcy proceedings. (*Id.*) Plaintiff asserts that the letter of the Bankruptcy Trustee is sufficient to demonstrate abandonment, but the bankruptcy statute requires that Plaintiff provide formal notice of the claim to the Trustee and all creditors so that a hearing may be held before an abandonment determination is made. Accordingly, this court finds that the letter of the Bankruptcy Trustee is not sufficient for this court to determine that the Trustee abandoned Plaintiff's claim, and as such, this court finds that only the Bankruptcy Trustee maintains standing to bring this claim. Thus, Plaintiff does not have standing to proceed with this claim because the Bankruptcy Trustee is the real party in interest.

### B. Claim Preclusion

Out of an abundance of caution, the court will separately address Defendant's judicial estoppel, res judicata, and equitable estoppel arguments. *See Pappacoda v. Palmetto Health*, Civil Action No. 3:13-cv-01995, 2014 WL 4417559 at *8 (D.S.C. Sept. 8, 2014).

#### 1. Judicial Estoppel

Defendant asserts that judicial estoppel bars Plaintiff from asserting an attorney preference claim. (ECF No. 4 at 4.) The doctrine of judicial estoppel precludes a party from adopting a position that is in conflict with a position taken in the same or related litigation. *Hayne Federal Credit Union v. Bailey*, 489 S.E.2d 472, 477 (S.C. 1997). The doctrine generally applies to statements of fact, and not inconsistent legal positions. *Id.* The purpose of the doctrine is to protect

the integrity of the judicial process. *Id.* In order to determine whether judicial estoppel applies in a given case, courts look to three factors. "First the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). "Second, the prior inconsistent position must have been accepted by the court." *Id.* "Finally, the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Id.* (internal quotations and citations omitted). In the bankruptcy context, a debtor's failure to disclose claims in bankruptcy and then raise the undisclosed claims in a later proceeding will not be judicially estopped where the non-disclosure is found to be inadvertent. *Evans v. Allied Air Enter.*, Civil Action No. 5:10-2029-MBS, 2011 WL 4548307, at *3 (D.S.C. Sept. 30, 2011). The non-disclosure will be deemed inadvertent where the debtor "lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* (internal citations and quotations omitted).

In *Evans*, a South Carolina District Judge determined that a plaintiff was judicially estopped from litigating a discrimination claim against his former employer because he failed to disclose the claim during his bankruptcy proceedings. *Id.* After the plaintiff was terminated, he filed a charge of discrimination against his employer with the Equal Employment Opportunity Commission. *Id.* at *1. Thereafter, Plaintiff retained the services of a lawyer to assist with filing for protection under Chapter 7 of the United States Bankruptcy Code. *Id.* The plaintiff averred on the filings with the Bankruptcy Court that he had no contingent or unliquidated claims. *Id.* After the former employer filed a motion to dismiss in the discrimination lawsuit, the plaintiff filed a motion to reopen proceedings in Bankruptcy court in order to allow for the administration of new assets. *Id.* The District Judge determined that these actions were enough to demonstrate bad faith on part of the plaintiff, particularly because the plaintiff knew he had a claim prior to filing the

9

documents in Bankruptcy Court and failed to disclose the claim, but only attempted to remedy the non-disclosure when exposed by an adversary in subsequent litigation. *Id.* at *4. Thus, the court found that the plaintiff was judicially estopped from asserting the discrimination claims against his former employer, but noted that the Bankruptcy Trustee would not be judicially estopped from asserting such claims. *Id.*

Here, Defendant contends that Plaintiff's failure to disclose the pre-petition attorney preference violation claim to the bankruptcy court amounts to taking inconsistent positions intentionally for the purpose of gaining unfair advantage. (ECF No. 4 at 5 ¶ 2-3.) Unlike in *Evans*, we have no indication that Plaintiff was aware of this attorney preference violation claim prior to receiving a discharge of his debt in Bankruptcy Court. The court acknowledges that in his Bankruptcy Petition, Plaintiff indicated that he had no contingent or unliquidated claims. (ECF No. 4-2 at 11.) The court also acknowledges that the attorney preference violation claim existed prior to the filing of Plaintiff's Bankruptcy Petition; however, there are not enough facts before this court to determine whether Plaintiff failed to disclose the claim to the Bankruptcy Court in bad faith. Accordingly, the court cannot find that Plaintiff should be judicially estopped from litigating the claim before the court.

### 2. Res Judicata

Defendant contends that the doctrine of res judicata bars Plaintiff's attempt to relitigate the validity of Defendant's secured lien after failing to raise the issue in the bankruptcy court. (ECF No. 4 at 6.) Defendant asserts that all three elements of res judicata are present, which "acts as an absolute bar to the subsequent actions with regard to every claim which was actually made . . . and those which might have been presented." (*Id.* at 5 ¶ 4 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996)).) Defendant claims the bankruptcy court's discharge order was final

10

and constitutes a ruling on the merits of Plaintiff's bankruptcy. Plaintiff was deemed the debtor and Defendant was the creditor in the bankruptcy; thus, the validity of the mortgage that created Defendant's security interest in his property was acknowledged by Plaintiff in his bankruptcy schedule despite discharging his personal obligation on the loan. (*Id.* at 7 ¶ 1.)

Res judicata bars subsequent actions by the same parties where "(1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Catawba Indian Nation v. State*, 756 S.E.2d 900, 907 (S.C. 2014). As a threshold matter, the court does not find that Plaintiff's action pursuant to S.C. Code § 37-10-105(a) is barred by res judicata. Although both Plaintiff and Defendant were involved in Plaintiff's previous bankruptcy action, the bankruptcy court was not called upon to determine whether Defendant properly ascertained Plaintiff's attorney preference before entering into the loan agreement. The bankruptcy court was only called upon to determine the validity of the loan agreement between Plaintiff and Defendant, and to what extent Defendant had priority to receive a distribution from Plaintiff's bankruptcy estate over other creditors. Nevertheless, Defendant contends that res judicata bars this action because Plaintiff seeks to relitigate the validity Defendant's lien. To the extent that Plaintiff seeks to relititgate the validity of Defendant's lien by having a court declare the loan agreement unconscionable pursuant to S.C. Code § 37-10-105(c), this court finds that such relief would be barred by res judicata. However, the court also finds that such relief is unavailable to Plaintiff.

In order for the relief outlined in section 37-10-105(c) to be available to Plaintiff, this court must find that Plaintiff has properly alleged either that the transaction was unconscionable or that it was induced by unconscionable conduct. "Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with

11

terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996).  Traditionally, a finding of unconscionability "requires a showing of both substantive unconscionability, or unfairness in the contract itself, and procedural unconscionability, or unfairness in the bargaining process." *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 277 (4th Cir. 2016).  However, based on the statute at issue, it appears that the legislature provided for an alternative theory of unconscionability based solely on conduct which caused Plaintiff to enter into the loan.  *Id.* at 284-85 (interpreting a West Virginia statute providing for a finding of unconscionability based on an agreement that was induced by unconscionable conduct, the Fourth Circuit determined that substantive unconscionability was not required).  But, for the conduct to qualify as an unconscionable inducement, it appears that Defendant's conduct must be an "affirmative [misrepresentation] or active deceit." *Id.* at 286.

Here, Plaintiff alleges that "Defendant's pre-populated Attorney/Insurance Preference Checklist presented to Plaintiff deprived him of a meaningful choice as to attorney to represent him in all aspects of the transaction and is unconscionable under South Carolina law[.]" (ECF No. 1-1 at 8 ¶ 14.)  Plaintiff further asserts that in doing so, Defendant steered Plaintiff to its affiliated company to handle the transaction, which enriched the company and deprived Plaintiff of his statutory rights.  (*Id.* at 8-9 ¶¶ 15-17.)  Plaintiff also alleges that "by presenting Plaintiff with a pre-populated form, Defendant sought to obtain from the borrower a waiver of her right to counsel," and that seeking such a waiver is unconscionable.  (*Id.* at 9 ¶¶ 20-21.)  Defendant asserts that Plaintiff failed to assert any allegation of substantive unconscionability, so his claim fails.  (*See* ECF No. 31 at 13.)  This court agrees.

Even though Plaintiff has alleged that Defendant's conduct deprived him of a meaningful choice as to his choice of attorney, Plaintiff has not alleged that any term of the loan agreement was so oppressive that no reasonable person would accept the agreement. Nor does Plaintiff allege any facts consistent with the factors listed under section 37-5-108(4)(a), which might give rise to a finding of unconscionability. Thus, based on the facts alleged, this court cannot find that the loan agreement was unconscionable at the time it was made. Further, this court cannot find that Defendant's alleged failure to ascertain Plaintiff's choice of attorney indicates that the agreement was induced by unconscionable conduct. The facts as alleged indicate that Plaintiff applied for the loan with Defendant. (ECF No. 1-1 at 8 ¶ 8.) There is no allegation that Plaintiff chose to apply for the loan based on statements made by Defendant regarding Plaintiff's ability to choose an attorney for closing. Accordingly, Plaintiff has not stated a claim for unconscionable inducement. Therefore, the court finds that Plaintiff has not properly stated a claim that would entitle her to relief pursuant to S.C. Code Ann. § 37-10-105(c).

### 3. Equitable Estoppel

Defendant alleges that Plaintiff should be equitably estopped from bringing this action because Defendant relied on the accuracy of Plaintiff's bankruptcy schedules, which stated that Plaintiff did not possess any causes of action. (ECF No. 4 at 8.) The doctrine of equitable estoppel requires that the party being estopped must have (1) exhibited conduct "which is calculated to convey the impression that the facts are . . . inconsistent with those which the party subsequently attempts to assert"; (2) had the intention that the other party might act upon such conduct; and (3) had actual or constructive knowledge of the real facts. *Strickland v. Strickland*, 650 S.E.2d 465, 470 (S.C. 2007). As discussed above, (*see supra* III.B.1 at 10), there is no indication that Plaintiff had any actual or constructive knowledge that he had a claim against Defendant for violating the

13

attorney preference statute. Thus, even though Plaintiff represented to the bankruptcy court that he did not have any potential causes of action at the time he filed for bankruptcy, this court does not find that equitable estoppel would bar Plaintiff from pursuing the attorney preference violation claim.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss, (ECF No. 4), is **GRANTED** because Plaintiff does not have standing to bring this cause of action since the Bankruptcy Trustee is the real party in interest. Accordingly, Plaintiff's Complaint, (ECF No. 1-1 at 7), is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 30, 2016
Columbia, South Carolina